The final case on the calendar for argument this morning is McLeod v. Mickle, No. 18-1272. Thank you. Good morning, Your Honors. My name is Thomas McLeod. I'm a pro se plaintiff appellate. May it please the court. There's a natural tension between Civil Rule 8's advice for a simple, concise, and direct statement of a complaint and Tuomaly's plausibility pleading standard. But this complaint sets out a minor constitutional violation, essentially holding a motorist for an extra 15 or 20 minutes for the purpose of bringing drug-sniffing dogs from down the road. From the point of view of the detained motorist, the case is simple. You are at a rainbow gathering, a place where there has been media reports and ongoing complaints over decades and litigation over traffic stops. The officer stops you, requests a search. You decline. The officer says he will call for a canine unit. But you look around and there's no canine unit visible anywhere. So you wait. And while you're waiting, another officer says, we're waiting for the canine unit. And you think, well, I knew that. And while you're waiting, you're upset because not too long ago, you read in the newspaper that the Supreme Court in the Rakvigas case said such detentions were unconstitutional. That's pretty much it. Mr. McCloud, let me ask you, the district court said that during oral argument in her court, you said that you don't contend that the traffic stop was unreasonably prolonged in duration, only that it was prolonged for an improper purpose. But you've just said that you believe it was prolonged for 15 to 20 minutes to allow for a dog sniff. Yes. I think I understood correctly. More specifically, to allow dogs to come from afar to the vicinity to effectuate the dog sniff. I think the district court misconstrued what I said and made it into a concession when it was really a clarification. And at the hearing transcript, page 2719 to page 282, I said, and I'll quote the transcript, and just to clarify again, I am not stating a claim of overall unreasonably long stop, only that the stop was extended for improper purpose. Let me ask you about that. Yes. Mr. McCloud, if I understand what happened here, the initial officer who stopped you, talked to you for a while, and then he went off and it's two other officers who came by and told you they were waiting for a canine unit, correct? Is that what happened? The third officer who happened by, who also asked consent to search, I asked him . . . No, I understand that. I just want to make sure I have understood correctly that the officer who originally stopped you, Officer Skips, is now off the scene at that point. That's correct. All right. Now, eventually he comes back on the scene and he has a summons for you or a . . . Yes. Okay. As I understand it, because your inspection sticker had expired . . . Yes. . . . you could have either been given the summons or they could have impounded your car because you're not supposed to drive a car without a valid inspection sticker. Is that your understanding here? It's a theoretical possibility. There was no discussion about impoundment. Well, in your presence now, you don't know what was going on in the . . . it's about fifteen minutes that the officer is away from you, right? Agreed, yes. Okay. To sustain your case, you're going to have to show that he had made the decision and was ready to issue the summons well before that fifteen minutes had elapsed. Is that right? Because if he was on the phone with his sergeant, should I impound the car? Should I issue a summons? What should I do? That wouldn't have been improper under Rodriguez, correct? That's correct. That is speculation. No, I understand. You don't know what went on during that time, but in that sense, we're not dealing with a delay of, say, four hours where there might be more reason to think that . . . I mean, I picked something extreme . . . Absolutely. . . . where you would think that they had prolonged it. This one, it's possible they didn't prolong it because they weren't deciding what to do in your circumstance. That's a possibility, or at least the time is such that it doesn't preclude that. I think that in the circumstances of the complaint, where it's a busy festival and actually impounding the car would have been impractical because it would have required a flatbed truck to come up a dirt road six miles and . . . You understand that in Rodriguez, the Supreme Court's decision, there were facts that allowed for the conclusion that the stop had ended? Yes. And, I'm just asking whether your facts allow us to conclude that the stop had ended and yet, nevertheless, they went ahead with the dog sniff. I think that the . . . well, what happened was that the officer concluded the questioning about the expired inspection sticker and then switched gears and started questioning about illegal drugs. And so, after that point, there was never again a question about the car, the safety of the car, the inspection sticker, or anything. Am I right? Go ahead. This is a motion to dismiss, right? Yes. So, we don't know. We have had no discovery. We don't know. That is my point. Mr. McCloud, don't you . . . didn't you allege also that one of the officers who was questioning you about drugs and seeking your consent to search your vehicle while Mr. Stokes was at a distance said that they were waiting for the canine? That's correct. He did. So, that might suggest that there is some basis to believe that it wasn't to further complete the expired sticker, whatever was necessary to follow up on that. Though, it might be. It could turn out either way, possibly. It might be. Again, this is a simple case. If the defendants have an alternative theory of the facts, they can . . . Do you have any sense of what the damages would be in a case like this? About a lost day's work, something like that? Why do you use the lost day's work as your measurement? I'm just curious. Because I didn't understand you to have lost a day of work. Did I miss something? Well, there was some emotional distress associated with this. I was threatened . . . All right. Well, that's the end of the road. Okay. We're talking about . . . I'm thinking of how much it costs for the two of you to be transported from the middle of Vermont, I suppose. Rutland, is it? To New York and back. It strikes me as fairly substantial. Well, Your Honor, the case isn't about the money. It's really about the principle here. I know. Okay. I would like to clarify the so-called admission. It appears that the district court really misconstrued what I said. I was talking about claims, not interpretation of the facts. I'm sorry. What are you referring to? Well, both the district court and the defendants have brought out the fact that I conceded that the overall length of the stop was not unreasonable. It's not that . . . That's an interpretation of the fact. What I was getting to in the hearing was that my claim was not a general claim of an unreasonably long stop. My claim was much more specific that the stop was prolonged for the purpose of bringing drug-stiffing dogs in contravention of Rodriguez. So I didn't concede . . . I mean, otherwise it would be a contradiction. I think we understand. Okay. So you have reserved two minutes for rebuttal. I'll go here for Mr. Shaw. May it please the Court. Whaley Shaw for the defendants and appellees. The dog sniff in this case concluded five minutes before Officer Stokes completed . . . The Supreme Court rejected the fact that just because they work efficiently and briefly, it's really whether the stop had ended. You heard the questions I asked of Mr. McCloud. Why isn't it appropriate to allow discovery at least on that point? Right. Because discovery is only appropriate and overcoming qualified immunity is only appropriate if the complaint satisfies the standards of Iqbal and Twombly. And in this case, it does not. But we can't expect Mr. McCloud to know whether in the 15 minutes that the defendant was away, he was either finding out how to handle this traffic stop or just waiting for the dog. Right. With all . . . So until that's resolved, how do we know whether or not there's a plausible claim here? And that's not information within Mr. McCloud's possession. With all due respect, the fact that Officer . . . I'm sorry, that Mr. McCloud doesn't know what was happening does not . . . That in itself does not . . . is not a way of overcoming the plausibility requirements. But he has two other officers who come and say to him that the reason he can't leave yet is that we're waiting for the dog, not we'll wait . . . You've got to . . . You're going to get issued a summons. You have to wait for it. That's not what they tell him. Right. So let me jump straight to that statement. So there are various issues with that allegation. But most importantly, let's accept that that allegation is true. And what that officer was saying is that we will not end this traffic stop unless or until the K-9 unit arrives and conducts a dog sniff. So I think that's a fair way of construing the allegation. That does not say that while they are waiting for the K-9 unit to arrive, Officer Stokes is not also, at that same time, doing what he needs to do to complete the stop. It simply says nothing. You know, Officer Stokes can be waiting for the K-9 unit and doing the paperwork at the same time. Why isn't he alleged enough under Rodriguez to get past a 12B6 motion? Well, because . . . for the exact reason that I said. Because what he needs to allege is not that . . . not just that they were waiting for the K-9 unit. Because so long as Officer Stokes was acting lawfully during the wait, then there's no constitutional violation. But he's alleging that the stop was unnecessarily and unreasonably prolonged to pursue a drug investigation that was unrelated to the expiration of his sticker. And the district court seems to have relied on the sense that there was a concession that, during oral argument, that there was no unreasonable prolongation. Mr. McCloud has clarified that that isn't what he intended to say and that he was misunderstood. I'm still having difficulty understanding why he hasn't satisfied 12B6. Right. So just to be clear. I mean, so we entirely understand Mr. McCloud to be making a claim that the time that it took to . . . that the stop was extended beyond the time it would otherwise have taken. And he does make a bare allegation to that effect in his complaint. But as we know from Iqbal and Twombly, the bare recitation of the elements of the constitutional violation here does not . . . is not entitled to the presumption of truth. The question is whether there are sufficient . . . Probably because the Supreme Court thought that the alternatives were much more likely than the plaintiff's allegations. Here, I'm not sure we're in that situation. We just don't know. I mean, I posited to Mr. McCloud that 15 minutes might be a decision whether to impound his car or to issue him a summons. But if, you know, discovery shows that the officer, and I'm just speculating, went into the patrol car, called a canine unit . . . and it was only when the canines came back negatively, that then they started to write the summons. That would be a very different scenario. And I'm perplexed as to why you don't think that should at least be developed. Well, it's certainly possible that Officer Stokes was simply sitting in his car and twiddling his thumbs. But in which case, you know, we would concede that that is a constitutional violation. But the question is, is that merely possible? Because if it's merely possible, that does not survive Iqbal and Twombly. Mr. McCloud has to . . . Is it plausible? No, I don't think it's plausible. And the reason it's not plausible is that we know from Iqbal where there's an allegation, a factual allegation, and it's consistent with lawful conduct. And that is the more obvious alternative explanation than that . . . More obvious? Because, well, I think the presumption is that a police officer, when conducting a traffic stop, is doing what he is supposed to be doing. So, the question is that . . . There is reason to believe that maybe he wasn't. Well, I can't identify that basis in the . . . One of the things that's difficult here is I can understand an officer, a perfectly honest officer, who doesn't know that he's supposed to know every Supreme Court decision that's ever been decided, would say, gee, I'm really concerned about this guy, and I'm really concerned about drugs, and I don't want to go in there. And he makes a judgment. I mean, that's plausible. That's surely plausible, isn't it? I think it's . . . Reasonable behavior? It's possible, but I don't think there's any . . . I think there's a presumption of regularity in the officer's conduct, and there's no . . . But also, I mean, it's alleged with some specificity that both Mr. Stokes and his colleagues continued to question Mr. McCloud about whether he had drugs and whether he'd consent to a search. And the context of the Rainbow Valley gathering also suggests that they may have had legitimate concerns, potentially, about drugs coming into the site or leaving the site. So why . . . that doesn't undermine . . . I mean, that gives some basis, potentially, for presuming that there might have been some other explanation for the delay. First, I would just point out that the officer's subjective motivation for conducting the stop is not relevant to the constitutional analysis under the Supreme Court's decision in Wren. But more importantly . . . It would be to the extent that he prolonged it beyond the purpose of the stop. My problem here is that you've got the plaintiff alleging, based on his direct knowledge, the two officers told him, when he asked if he could leave, that they were waiting for a canine dog. And it's hard for me to say that it's now implausible to think that that's the reason that the stop continued. After discovery, you may very well make a compelling case for qualified immunity. The question is whether you can make it on this record, where we have to construe the pleadings in the light most favorable to Mr. McCloud. That's entirely correct. But I just want to remind the Court that, again, this arises in a qualified immunity posture. The Supreme Court has said that qualified immunity should be addressed at the earliest possible stage. Absolutely. But on the accepting the facts as alleged by the plaintiff. So you have to show the facts are inadequate. And I don't know how you can do that when he pleads, the two officers tell him the reason he can't leave is because they're waiting for a canine dog. Well, it may be that they said that he can't leave until the canine unit completed the dog sniff. But, in fact, if, in fact, Officer Stokes was just doing what he was supposed to be . . . Ultimately, I think . . . There's no record on that. Right. I don't think we need a record. Ultimately, what this case comes down to is has Mr. McCloud adequately pleaded factual allegations in his complaint that make it plausible that what Officer Stokes was doing during the time that they were waiting for the dog sniff was simply sitting in his car and doing nothing and being dilatory. And I don't think . . . He doesn't have to allege that or create the inference that Officer Stokes was doing nothing or being dilatory. He could have been busy with any number of things. But, what he has alleged is that he was focused on drug sniffing and that the detention was prolonged as a result. Well, if Officer Stokes was sitting in his car and he was, as Judge Rogers suggested, asking his sergeant about whether to impound the car or he was just simply completing the paperwork or running a warrant search or any of those things, none of those would establish a constitutional violation. The violation . . . You want to give us a proffer? I'm sorry? You want to give us a proffer? I'm sorry. I . . . No. I mean, the problem is you don't know. He's your client. You want to give us a proffer? Right. No. And, again, I don't think the Court needs to know. The question is whether there was a plausible inference that what occurred was the only set of events that would create a violation. Thank you. Thank you very much. I think we have the argument. Mr. McCloud, you have two minutes to rebuttal. Thank you, Your Honor. Your Honor, as each of you have said, there is no way for me, myself, as a motorist or any motorist, to know what an officer is doing when he walks away to his squad car and he's on his radio, who he's talking to, who he's not talking to. It's a peculiar argument for us because we have the witness here. We have the witness here arguing as to plausibility. It puts it in a very slightly strange light for me, at least. Continue. I'm sorry. And, Your Honor, this case has been going on now for two and a half years, and the defendants have not provided any actual facts in this whole time. So the entire case so far has simply been attacking the theory of the complaint and raising all kinds of hypothetical reasons why it could not be so. Thank you. Thank you very much for your arguments. We'll take the matter under advisement. The final case on our calendar this morning, United States v. Figueroa, is on submission. The clerk will please adjourn court. Court is adjourned.